**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KATHERINE MADDEN**,<br><br>*Plaintiff*<br><br>v.<br><br>**CANUS CORPORATION, et al.**,<br><br>*Defendants* | **Case No. 2:19-cv-01632-JDW** |

**MEMORANDUM**

Katherine Madden has sued Canus Corporation, alleging that Canus has delayed unreasonably in processing her application to rent an apartment at the Ardmore Crossing housing complex. Canus moves to dismiss, arguing that Ms. Madden's claims are not ripe and that they fail in any event. The Court concludes that the claims are ripe to the extent they allege an unreasonable delay in processing Ms. Madden's application. Some of Ms. Madden's claims fail, including two that she concedes fail. For others, however, including claims under the Fair Housing Act and the Rehabilitation Act, Ms. Madden has pled plausible claims that can move forward.

## I. FACTUAL BACKGROUND

Ms. Madden suffers from congestive heart failure with atrial fibrillation, which affects her ability to walk, climb stairs, lift items, and/or stand for long periods of time. (ECF No. 12 ¶¶ 12-13.) She also suffers from depression and maintains an emotional support cat. (*Id.* at ¶ 10.) In April 2017, Ms. Madden began the process of applying to participate in the Montgomery County Housing Authority's ("MCHA") Housing Choice Voucher Program for affordable senior housing at Ardmore Crossing, which is an apartment complex that Canus owns and/or managers. (*Id.* at

¶¶ 6, 15.) On March 2, 2018, Ms. Madden received a notification that she was at the top of the waiting list for an apartment at Ardmore Crossing. (*Id.* at ¶ 18.) Ms. Madden then tried to ascertain whether she would be able to bring her emotional support cat with her. (*Id.* at ¶¶ 18-33.) During a meeting on September 20, 2018, Canus representatives agreed that Ms. Madden's request for an accommodation for her emotional support cat would be tabled for an indefinite period. (*Id.* at ¶ 31.) At some unspecified point, Canus stated that her application to Ardmore Crossing should be skipped because of her disability. (*Id.* at ¶ 88.)

On September 26, 2018, MCHA issued an Ardmore Crossing housing voucher to Ms. Madden. (*Id.* at ¶ 33.) On October 9, 2018, Canus advised Ms. Madden that there was an empty unit but that the apartment required a full renovation before Canus could show the apartment or accept a new application. (*Id.* at ¶ 35.) Ms. Madden contends this was false. (*Id.* at ¶ 107.) Canus later advised Ms. Madden that renovations had stalled because a needed roof replacement took priority. (*Id.* at ¶¶ 37, 41.) Ms. Madden contends this statement was false as well. (*Id.* at ¶ 108.) Over the next few months, Ms. Madden made repeated inquiries as to the status of the apartment and the overall application process, to no avail. (*Id.* at ¶¶ 37-43.)

In March 2019, a resident of Ardmore Crossing told Ms. Madden that there were three vacant units in the building. (*Id.* at ¶ 44.) Ms. Madden initiated this lawsuit on April 15, 2019. Then, on May 23, 2019, Canus advised that it would contact Ms. Madden when an appointment could be scheduled so that she could continue with the rental process. (*Id.* at ¶ 46.) From that time until July 2, 2019, Ms. Madden did not receive any notice about the status of her application, nor had Canus scheduled an appointment. (*Id.* at ¶ 47.) When Ms. Madden filed her Amended Complaint on July 15, 2019, she did not indicate the status of her rental application.

In her Amended Complaint, Ms. Madden asserts claims against Canus for discrimination under the Fair Housing Act ("FHA") and Section 504 of the Rehabilitation Act ("Rehab Act"), violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and 42 U.S.C. § 1985(3), and common law claims for misrepresentation and concerted tortious conduct.

## II. <u>LEGAL STANDARD</u>

A district court may dismiss a plaintiff's complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction bears the burden of establishing its existence. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citation omitted). Challenges to subject matter jurisdiction may be facial or factual. *See id.* "A facial attack 'concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (quote omitted). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (same).

A district court may also dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same). A claim has facial plausibility when the complaint contains factual allegations that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (same). In doing

so, the court must "draw on its judicial experience and common sense." *Id.* (same). Under the governing "pleading regime[,]" a court confronted with a 12(b)(6) motion must take three steps. First, it must identify the elements needed to set forth a particular claim. *Id.* at 878 (same). Second, it should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* (same). Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (same). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citations omitted).

## III. ANALYSIS

### A. Ripeness

Canus contends that because it has not denied Ms. Madden a unit at Ardmore Crossing and has not denied her request to accommodate her emotional support animal, Ms. Madden's FHA claims are not ripe for adjudication. That argument ignores Ms. Madden's allegations that Canus' delay in processing her rental application harmed her. Viewed through this lens, Ms. Madden's claims are ripe for review.

"Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial Power' to 'Cases' and 'Controversies.'" *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538-39 (3d Cir. 2017) (quotation omitted). The ripeness doctrine operates "to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements . . . ." *Id.* (quotation omitted). "[T]he Supreme Court laid out two principal considerations for gauging ripeness including (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136,

149 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)). "When making a 'fitness for review' determination, a court considers whether the issues presented are purely legal, and the degree to which the challenged action is final. A court must consider whether the claims involve uncertain and contingent events that may not occur as anticipated or may not occur at all." *Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 183 (3d Cir. 2014). This case is fit for judicial resolution, and withholding judicial consideration of Ms. Madden's claims constitutes a unique hardship, given the nature of those claims.

"An undue delay in granting a reasonable accommodation may amount to a refusal." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017); *see also Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (reasonable fact finder could not have concluded that defendant was still undertaking meaningful review of an accommodation request where request had been pending for at least 6 months); *Astralis Condo. Ass'n. v. Sec'y, U.S. Dep't of Hous. and Urban Dev.*, 620 F.3d 62, 68-69 (1st Cir. 2010) (finding actionable refusal to grant accommodation where condominium association delayed decision on request for handicapped parking spaces for a year); *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) ("[A]n indeterminate delay has the same effect as an outright denial."). In *Groome*, for example, the Court of Appeals upheld the district court's finding that the defendants' unjustified delay constituted a denial of a reasonable accommodation where, four months after the lawsuit was filed, the defendants still had not provided any timetable or plan to consider the plaintiff's application for a zoning accommodation.

Because lack of ripeness is a facial challenge under Rule 12(b)(1), the Court must accept Ms. Madden's allegations as true and construe all reasonable inferences in her favor at this stage of the proceedings. *See Thompson v. Borough of Munhall*, 44 F. App'x 582, 583 (3d Cir. 2002).

In doing so, the Court infers that a unit in Ardmore Crossing has been available to rent at least since October 2018. Yet when Ms. Madden filed her initial Complaint, Canus had not yet processed her rental application. It is unclear how much longer that delay persisted, or even whether it has been resolved. In any event, Canus' delay could amount to a denial of Ms. Madden's rental application, making her claims fit for adjudication, including her claims related to Canus' refusal to accommodate her emotional support cat.

Canus misses the mark when it contends that it cannot accept or deny Ms. Madden's request for an accommodation until her rental application is approved. This is because "a refusal 'occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings.'" *Revock*, 853 F.3d at 111 (quoting *Groome*, 234 F.3d at 199)). Thus, Canus refused Ms. Madden's request for an accommodation when it tabled her request and stated that her application to Ardmore Crossing should be skipped because her of disability. (ECF No. 12 ¶¶ 31, 88). This aspect of Ms. Madden's claims is therefore fit for adjudication as well. Finally, contrary to Canus' assertions, the fact that Canus now represents that Ms. Madden's accommodation request will be approved if her rental application is accepted does not render her claims moot, as she seeks monetary damages in addition to injunctive relief.

"Regarding the second factor of the ripeness inquiry, '[n]umerous courts have stressed that housing discrimination causes a uniquely immediate injury. Such discrimination … makes these controversies ripe." *Groome*, 234 F.3d at 200 (quoting *Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp.*, 996 F. Supp. 409, 427 (D.N.J. 1998)). Thus, both prongs of the ripeness inquiry are satisfied with respect to Ms. Madden's FHA and Section 504 discrimination claims, and those claims will not be dismissed for lack of ripeness.

### B. Sufficiency of Claims

Canus does not challenge the sufficiency of Ms. Madden's claims under the FHA. It does, however, challenge the other claims in her Amended Complaint.

#### 1. Rehab Act Claims

Canus asks the Court to dismiss the Rehab Act claims because it "does not participate in any federal program or receive federal aid." (ECF No. 19 at 15.) In her Amended Complaint, Ms. Madden alleges that Canus "is a recipient of federal financial assistance." (ECF No. 12 ¶ 93.) The Court cannot and will not ignore that allegation. Canus' argument therefore fails.

Canus also argues more generally that it is "simply implausible to suggest that [Ms. Madden] is being discriminated against because she is disabled by the management of an apartment building whose tenants are almost all disabled." (ECF No. 19 at 9.) Whether or not Ardmore Crossing's tenants are all disabled is a question of fact that cannot be resolved at the Motion to Dismiss stage. Thus, it is of no moment that Canus contends it does not discriminate based on disability because most of its residents are disabled.

#### 2. Negligent and Intentional Misrepresentation Claims

To state a claim for either negligent or intentional misrepresentation, Ms. Madden must plead justifiable reliance on the alleged misrepresentation and that the resulting injury was proximately caused by the reliance, among other things. *See Bortz v. Noon*, 729 A.2d 555, 560-61 (Pa. 1999). Canus contends in its Motion that Ms. Madden has not alleged either of these elements. The Court agrees.

In her Amended Complaint, Ms. Madden asserts that Canus made various misrepresentations, including that 1) the vacant unit required a complete renovation before Canus could move forward with Ms. Madden's rental application, 2) roof restoration work needed to be completed before renovations to the vacant unit, and 3) Canus needed HUD approval before

making the roof repairs. Ms. Madden alleges that these representations were false and that Canus could have moved forward with her rental application long before July 2019. However, Ms. Madden does not allege in the Amended Complaint that she relied on these statements to her detriment. On the contrary, the Amended Complaint demonstrates Ms. Madden's dogged pursuit of a place at Ardmore Crossing. Indeed, Ms. Madden is apparently still pursuing those efforts, including through this lawsuit.

In her opposition brief, Ms. Madden argues that she relied on the alleged misrepresentations "by following up regularly to check on the status of any potential availability" and waiting until April 15, 2019, to file the present lawsuit. (ECF No. 21 at 10.) However, Ms. Madden cannot supplement her allegations through briefing. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). In any event, even if the Court were to consider these allegations, it would still find them insufficient because they are not tied to any resulting injury. At most, the Amended Complaint sets forth that Ms. Madden's rental application "was inordinately delayed" and that Ms. Madden "has been frustrated in her efforts to secure accessible and affordable housing at Ardmore Crossing." (ECF No. 12 ¶¶ 110, 118, 123.) In a conclusory fashion, Ms. Madden also contends that she has sustained emotional distress, pain and suffering, and financial expense as a result. (*Id.* at ¶¶ 119, 124.) It is unclear, however, how these alleged injuries resulted from Ms. Madden "following up regularly" or waiting to file suit, especially in light of her admission that she "has applied to about ten other senior affordable housing properties but had been waitlisted at each one for about a year or so." (*Id.* at ¶ 48.)

At present, Ms. Madden's allegations of reliance and resulting injury are too vague and conclusory to state a claim for negligent or intentional misrepresentation. If, however, Ms.

Madden has a good faith basis to allege facts that demonstrate what she did or did not do based upon Canus' alleged misrepresentations and how those actions or inactions harmed her, then she may file an amended complaint within two weeks to address the pleading deficiencies the Court has identified.

**3. Concerted Tortious Conduct Claim**

Canus contends that, because the misrepresentation claims fail, so too does the concerted tortious conduct claim. However, "an action brought for compensation by a victim of housing discrimination is, in effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *see also Curtis v. Loether*, 415 U.S. 189, 195 (1974) ("A damages action under the [FHA] sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach."). Ms. Madden's concerted tortious conduct claim is therefore viable because her FHA allegations are "acts of a tortious character pursuant to a common design or plan." *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (quote omitted).

**4. Conceded Claims**

Ms. Madden concedes that she cannot state a claim for the alleged violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and 42 U.S.C. § 1985(3) set forth in Counts VI and XV of her Amended Complaint, respectively. (ECF No. 21 at 9, 13.) Thus, the Court will dismiss those claims with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Canus' Motion to Dismiss. The Court will dismiss Counts VI and XV of the Amended Complaint with prejudice. The Court will dismiss the negligent and intentional misrepresentation claims (Counts VII and VIII), though the dismissal will be without prejudice. Ms. Madden may file an amended complaint

if she can allege facts sufficient to state a claim for negligent and/or intentional misrepresentation. Finally, the Court will not dismiss the remaining counts of the Amended Complaint. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated: December 3, 2019